# Alabama Great Southern Railroad Co. v. Linn *et al.*

*Action against Railroad Company for damages to Team of Mules.*

1. *Action against railroad; when question of willful or wanton negligence improperly submitted to the jury.*—Where, in an action against a railroad company for damages to mules and a wagon, which were being driven over a crossing, it is shown that the said crossing was not a public crossing, but when unobstructed, was used as a matter of convenience, without interference or objection from the railroad company, and the evidence was in conflict as to whether or not signals of approach were given by the train causing the injury, and also as to whether plaintiff's servant, who was driving the wagon, stopped and looked and listened before attempting to cross the track, and there was no evidence from which it could be inferred that defendant's servants were negligent in the use of preventive effort after the discovery of the perilous situation of plaintiff's team, it is error for the court to submit to the jury the question of willful or wanton negligence on the part of defendant; there being no evidence in the case that would justify the jury finding such negligence.

2. *Failure of railroad company to observe statutory requirements; simple negligence.*—The failure of the employés of a railroad company to comply with the statutory requirements by giving signals when passing through any village, town or city, (Code, § 1144), or by not observing the rate of speed fixed by law, makes the railroad company guilty of no more than simple negligence.

3. *Crossing railroad track not trespass; duty of railroad company.*— A person may cross the track of a railroad company, wherever he may have occasion to do so, without becoming a trespasser, and where a railroad company has acquiesced in the use of a private crossing without objection, persons using such crossing are mere licensees; and the railroad company owes them no other duty than to look out for obstructions, and to exercise due care and reasonable diligence to avoid injuring them after discovering their peril.

4. *Expert testimony; when admissible.*—In an action against a railroad company for injuries to a team at a crossing, where one, who had worked on an engine eleven years and knew all about the management of locomotives, and who was on the engine at the time of the accident, testified to all the acts done by the engineer in charge of the engine, in his efforts to stop the train as soon as the signal of danger was given him, it is error not to permit such witness to state

whether or not the train was stopped as soon as it could have been done after the signal was given

5. *Evidence as to whether a train could have been seen; when admissible.*—In an action against a railroad company for injuries to a team at a crossing, where a witness testifies that he was standing behind the team when it started across the track, that he heard the train coming, and looked up and saw it, that he called to the driver of said team, and told him not to attempt to cross, but the driver seemed excited, and, without stopping before trying to cross, and without appearing to look or listen for a train, he whipped up his team and started across, it is competent to ask such witness, "Could the driver of this wagon have seen the cars in time to have prevented the accident, if he had looked up and down the track before attempting to cross?" his answer to such question being admissible in evidence as the statement of a fact.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES J. BANKS.

The appellees, George W. Linn & Son, brought the present action against the Alabama Great Southern Railroad Company, to recover damages sustained by them by reason of injuries inflicted to a team of mules, wagon and harness owned by them, which injuries are alleged to have been caused by reason of the negligence of the defendant, through its employés. The negligence complained of was in the failure of the defendant's employés to give the proper signals while passing a crossing at which the accident occurred; their failure to stop the train after discovering the peril of the plaintiffs' team; and the running of said train at a high rate of speed across the road crossing where the accident happened. The defendant pleaded the general issue, and in several different forms the contributory negligence of the plaintiffs; and upon these pleas issue was joined.

Upon the introduction of one B. Mason as a witness for the defendant, he testified that he was on the engine at the time of the accident; that the whistle had been blown for the crossing, and that he himself was ringing the bell as they approached the crossing; that when the signal to stop was given by one of the brakemen on the train, (which signal the brakeman testified he gave immediately upon discovering the peril of plaintiffs' team), the engineer blew for brakes, put on the brakes of his engine, reversed the engine and sanded the track. Upon this witness further testifying that he himself had been

working on an engine as engineer and fireman for about eleven years, and knew all about the management of locomotive engines, the defendant asked him this question : "Whether or not the train of cars was stopped as soon as it could be done, after the signal was given?" The plaintiff objected to this question, the court sustained the objection, and the defendant duly excepted.

One T. H. Wright, who was introduced as a witness for the defendant, testified that he was standing behind the wagon just before it started across the track of the defendant ; that the Alice Furnace was making a good deal of fuss, but he heard the train coming on the A. G. S. track, and looked up and saw it approaching ; that as the driver of plaintiffs' wagon started to cross the track, the witness hallooed to him not to attempt to go across the track, but the driver seemed excited, did not seem to apprehend the danger he was in, and whipped up his mules and started across the track ; that the driver did not stop before he started across the track, nor did he appear to look or listen for the train. The defendant then asked this witness the following question : "Could the driver of this wagon have seen the cars in time to have prevented the accident, if he had looked up and down the track before attempting to cross?" The plaintiff objected to this question, the court sustained the objection, and the defendant duly excepted. The court in its oral charge to the jury, among other things, instructed them as follows : "You must decide under this evidence whether or not the defendant was guilty of wanton, reckless or intentional negligence."

Under the opinion in this case, it is not deemed necessary to set out at length the portions of the court's oral charge to the jury to which exceptions were reserved, and the many charges asked by the defendant, to the refusal to give each of which the defendant separately excepted.

There were verdict and judgment for the plaintiff, and defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

A. G. SMITH, for appellant.—1. The several rulings of the court on the questions of evidence were erroneous.— *M. & C. R. R. Co. v. Womack*, 84 Ala. 149 ; *Carrington v.*

[Alabama Great Southern Railroad Co. v. Linn *et al.*]

*L. & N. R. R. Co.*, 88 Ala. 472; *Pratt C. & I. Co. v. Davis*, 79 Ala. 308; *Tesney v. State*, 77 Ala. 33.

2.  Appellant was not guilty of wanton, reckless or intentional negligence in this case.—*Leak v. R. R. Co.*, 90 Ala. 161; *R. R. Co. v. Crawford*, 89 Ala. 240; *H. A. & B. R. R. Co. v. Sampson*, 91 Ala. 560; *L. & N. R. R. Co. v. Webb*, 90 Ala. 185; *G. P. R. R. Co. v. Lee*, 92 Ala. 262; *Nave v. A. G. S. R. R. Co.*, 96 Ala. 264; *L. & N. R. R. Co. v. Webb*, 97 Ala. 308; *Glass v. M. & C. R. R. Co.*, 94 Ala. 581; *R. R. Co. v. Vaughan*, 93 Ala 209; *R. R. Co. v. Trammell*, 93 Ala. 350; *R. R. Co. v. Vance*, 93 Ala. 144; *H. A. & B. R. R. Co. v. Maddox*, 100 Ala. 618; *Carrington v. L. & N. R. R. Co.*, 88 Ala. 472.

3.  The servant of appellee was guilty of such proximate contributory negligence as will preclude a recovery in this case. See authorities cited to the second proposition, and in addition: *E. T. V. & G. R'way Co. v. Kornegay*, 92 Ala. 228; *Gothard v. A. G. S. R. R. Co.*, 67 Ala. 114.

4.  Even if appellee is entitled to recover, he is only entitled to recover compensatory damages, not punitive damages.—See authorities cited above, and in addition: *R. R. Co. Chewning*, 93 Ala. 25; *R. R. Co. v. Vance*, 93 Ala. 144; *R. R. Co. v. Arnold*, 84 Ala. 159.

R. L. Thornton and J. W. Bush, *contra*.

COLEMAN, J.—The appellees, Linn & Son, brought the present action to recover damages sustained by them, by the loss of one mule, injury to another mule, and the destruction of a wagon and harness. The proof shows that the injury was the result of a collision by a train of cars operated by the defendant. The proof also shows that the collision occurred at a private crossing, that is, according to the proof in this case, at a place used for crossing the railroad track, as a matter of convenience, and not as a matter of public right, nor a matter of private right. The proof is that as a crossing, at times, it was closed for weeks and months without objection or protest. That when it was unobstructed, any and everybody who saw proper to avail themselves of its accessibility and convenience, used the crossing without interference or objection, and sometimes as many as twenty wagons a day, hauling slag and cinders from the Alice.

Furnace, crossed there. The proof shows that scattered along on both sides of the railroad track there were forty or fifty dwelling houses, and the place was a village known as Alice Furnace. The train was being backed at the time of the collision, and the speed is placed by the witnesses at from six to twenty-five miles an hour. The evidence was in conflict as to whether or not signals of the approach of the train were given, and also whether the plaintiff's servant, who was driving the wagon, stopped and looked or listened, before driving upon the track. In its instruction to the jury, and in refusing instructions requested, the trial court proceeded upon the theory, that there was evidence of willful and intentional injury, or negligence so wanton and reckless as to be its equivalent. This is the first question for consideration. We have examined the record and have discovered no fact from which it could be inferred that defendant's servants were negligent in the use of preventive effort after the discovery of the perilous position of plaintiffs' team, or had any actual knowledge of the presence and peril of plaintiffs' team in time to have prevented a collision by the use of preventive effort. Neither does the evidence show such conditions nor attending circumstances as would justify the imputation of such knowledge to those operating the train. The place was not a public crossing. It was not a street or a public thoroughfare. At times a good many wagons crossed here engaged in hauling slag and cinders from the Alice Furnace; at other times for weeks it was closed. At no time was it used as a matter of right, but only of convenience. The principles which apply under such circumstances are stated in the case of *Webb v. L. & N. R. R. Co.*, 97 Ala. 308, and authorities cited; *Stringer v. Alabama Min. R. R. Co.*, 99 Ala. 397. We think the court erred in submitting the question of wanton negligence and willful injury to the jury.

The statute, (Code, § 1144), requires the engineer "to blow the whistle or ring the bell, at short intervals on entering into, or while moving within, or passing through any village, town or city;" and by section 1147 of the Code, it is declared that "A railroad company is liable for all damages done to persons, or to stock or other property, resulting from a failure to comply" with these requirements. We are of opinion that Alice

Furnace is a village within the meaning of section 1144 *supra*. The failure to observe these requirements, *per se*, is no more than simple negligence.—*Ga. Pac. Railway Co. v. Lee*, 92 Ala. 262; *H. A. & B. R. R. Co. v. Sampson*, 91 Ala. 560.

We have held that under some circumstances a person may cross over a railroad track, whenever he may come to its line, without being a trespasser in the sense in which that term is usually understood.—*Stringer v. Ala. Min. R. R. Co.*, 99 Ala. 397, *supra*; *Glass v. Memphis & Charleston R. R. Co.*, 94 Ala. 587. This rule would be especially applicable in cases like the present where it has been acquiesced in without objection. The person undertaking to cross a railroad under such circumstances is entitled to no other privileges or protection than a mere licensee. He cannot thereby impose the additional duties upon a railroad to know he is there, or to keep an especial lookout for him. All that can be required of a railroad company operating its trains over its own track, under such circumstances, is to perform its duty in looking out for obstructions, and to use due care and reasonable diligence to avoid inflicting an injury to persons after being conscious of the peril. When the railroad has done this, it has discharged its duty to the person undertaking to cross its track at such crossings.—*Pratt Coal & Iron Co. v. Davis*, 79 Ala. 308; *Tanner v. L. & N. R. R. Co.*, 60 Ala. 621.

These principles of law embrace all questions arising from instructions given, and those refused, to which exceptions were reserved.

The court erred in not permitting the witness Mason to answer the question propounded to him. This witness had testified to all the acts done by the engineer in order to stop the train. He was an expert. Whether we regard the answer as a short-hand rendering of facts, or as the opinion of an expert upon facts stated, in either view, it was admissible.

The court should have allowed the question to the witness Wright. This witness had shown he was in a position to see both the railroad track and plaintiff's servant. If his testimony was credible, he knew how far off the train was, and plaintiffs' servant's position. He could testify as a fact, whether one looking could have seen the approaching train, and whether by looking, the

driver could have seen it, before venturing across the track. The opportunity and means of knowledge, and the credibility of the witness, and the weight to be given to his testimony could have been tested by a cross examination.—*Tesney v. The State*, 77 Ala. 33 ; *McVay v. The State*, 100 Ala. 110.

Reversed and remanded.